UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JORDAN TALLEY-SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:25-CV-282-PPS-AZ |
| | ) |
| WEBB FORD INC, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Representing himself, Jordan Talley-Smith brought this action against his former employer and a woman named Kimberly Walcott who works for the Indiana Department of Workforce Development. Walcott seeks dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6). [DE 9.] Because Talley-Smith has failed to plausibly state claims for relief regarding any violation of a federal constitutional or statutory right, the motion will be granted (but without prejudice and granting Plaintiff leave to re-file Count III if he chooses, and cure the pleading deficiencies articulated in this order).

### **Background**

Here are the facts, as best I can tell, as described in the pro se complaint which is (regrettably) a bit confusing. Generally speaking, Talley- Smith claims his former employer, Webb Ford, Inc., discriminated against him when it forced him to resign after Talley-Smith reported allegedly illegal and unsafe practices by Webb Ford. [DE 1 at 1.]

He sued Webb Ford, his previous manager Vince Shaughnessy, and the instant defendant (whose motion to dismiss is before the court), Kimberly Walcott. Walcott is a Claims Investigator with the Indiana Department of Workforce Development (DWD). [*Id.* at 2.] She is being sued in her individual capacity for "engaging in retaliatory conduct under color of state law in violation of Plaintiff's federally protected rights." *Id.*

Talley-Smith alleges two separate ALJs ruled in his favor during unemployment proceedings, confirming he was not terminated for cause and had been constructively discharged. [*Id.* at 4.] He claims that after he received the ALJ rulings, he was "contacted by DWD investigator Kimberly Walcott, who attempted to intimidate him and undermine his eligibility" presumably for unemployment benefits. [*Id.* at 4.] He claims that Ms. Walcott "contacted Plaintiff and engaged in coercive communication intended to undermine those rulings" and "intended to deprive Plaintiff of federally protected rights, including his right to fair administrative adjudication and freedom from retaliation for protected workplace complaints." [*Id.* at 5.]

The complaint states one count against Walcott for violation of 42 U.S.C. § 1983. *Id.* It seems that Plaintiff is trying to use Section 1983 to hold Walcott liable for violating his 14th Amendment right to procedural due process, and is trying to show that she also violated Title VII's ban on retaliatory conduct.

## Discussion

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

2

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678. Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

I am aware of the Supreme Court's admonition that a document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and internal citations omitted). But while courts must give liberal construction to a *pro se* plaintiff's complaint, "it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

Talley-Smith claims that Walcott called him to discuss his employment benefits with him and then attempted to intimidate him and undermine his eligibility for benefits. [DE 1 at 4-5.] This, he claims, violated his right to due process under the 14th Amendment and violated Title VII.

First, Title VII only applies to an "employer" and there are no allegations that Walcott is Talley-Smith's employer. Title VII makes it unlawful for an "employer" to

3

refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of that individual's race, color, religion, sex, or national origin. *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018); 42 U.S.C. §2000e-2(a)(1); *see also Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023) ("Only an employer can be liable under Title VII.".  As an investigator for the Indiana Department of Workforce Development, Walcott does not qualify as Talley-Smith's employer.

Second, the Fourteenth Amendment prevents states from depriving a person of property or liberty without due process of law.  U.S. Const. amend. XIV, § 1.  To make a due process claim, it is first necessary to identify a protected property or liberty interest protected by the Fourteenth Amendment; then, if such an interest has been deprived, I must evaluate what process was due under the circumstances. *See Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 536 (7th Cir. 2023) (citing *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013)).  In looking at the second prong, the Court should consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In looking at the first question, whether Plaintiff has a property interest in his unemployment benefits under Indiana law, the answer is unequivocally yes. *See P.J. v. Rev. Bd. of Ind. Dept. Of Workforce Dev.*, 243 N.E.3d 421, 425 (Ind. Ct. App. 2024) ("It is undisputed that P.J. has a property interest in receiving unemployment benefits.").

However, the answer to the second question is equally elementary. Talley-Smith has not alleged that Walcott's phone call had any effect on the availability of his unemployment benefits whatsoever, so he has not actually alleged that she violated his procedural due process rights. He only states the call was "intended to deprive [him] . . . his right to fair administrative adjudication." [DE 1 at 5.] In the complaint, Talley-Smith does not provide any facts whatsoever showing that the phone call led to a denial of benefits.

Talley-Smith attached an exhibit to his complaint which (although not authenticated) he purports is a transcript of the call with Walcott on October 7, 2024. [DE 1-1 at 70.] During the call, Walcott seems to be checking in on the status of why Talley-Smith filed some paperwork late. When Talley-Smith accuses the Department of Workforce Development for not having released any unemployment benefits, Walcott states: "[t]his conversation is meant to help clarify what's happening, or at least part of what's going on." *Id.* She then replies, "[o]ne of the reasons I'm calling is because the voucher you filed for the week ending September 28 was filed late. It was filed yesterday, on October 6. Why was the voucher filed late?" [*Id.* at 71.] Talley-Smith then responded in part that he still hadn't received his benefits and he "really [didn't] have much to say. [He'd] rather handle this through the courts. I'm tired of dealing with it.

You keep worrying about my work search requirements, but my benefits haven't been released." *Id.* Ms. Walcott then went on to state the DWD received information from the Hammond WorkOne office that he was scheduled to attend a university orientation on September 25, but he did not attend, and Talley-Smith responded, "I'm not required to attend anything." *Id.* Walcott then cordially finished the phone call stating, "[t]hank you for your time." *Id.* Talley-Smith then retorted, "[t]his is astonishing. You keep calling me about irrelevant issues but haven't acknowledged my writ of mandamus or my demand for the immediate release of my benefits. I'll see you all in court. Have a great day." [*Id.* at 72.] Ms. Walcott answered, "[y]ou too" and then the call concluded. *Id.*

Overall this phone call appears to be a check-in on the status of Talley-Smith. It does not seem to be any kind of adjudicatory event that could terminate Talley-Smith's unemployment benefits. In his reply memorandum, Talley-Smith includes supposed language from a later call that does not appear in his attached exhibit. [DE 1-1 at 70-72; DE 11 at 1.] In addition, he claims for the first time that Walcott "later testified at the December 6, 2024 hearing before ALJ Blakely, where her narrative was adopted to justify adverse rulings issued on December 9, 2024, suspending and reversing benefits." [DE 11 at 2.]

Implicit in this argument is the fact that an adjudicative, evidentiary hearing overseen by an administrative law judge occurred, at which Walcott allegedly provided testimony. "On its face, such a hearing embodies the 'fundamental requirement of due process.'" *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018). After all, "[t]he

hallmarks of procedural due process are notice and an opportunity to be heard." *Pugel v. Bd. of Tr. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Talley-Smith has not claimed, or alleged any facts in support of a claim, that he was not allowed to attend this hearing, that he lacked notice of it, or anything else that would allow the Court to plausibly conclude that he lacked procedural due process with respect to the hearing and Walcott's participation in it.

Finally, although the parties did not brief this issue, even if Talley-Smith has somehow stated a cognizable section 1983 claim, Walcott is sued in her individual capacity and allegedly "acted under color of state law and within the scope of her official duties" [DE 1 at 5], so she would also be immune from suit. *See Mallum v. Wisconsin Laborers' Health Fund*, No. 16-CV-1190, 2017 WL 1740302, at *3 (E.D. Wis. May 3, 2017) (finding DWD's rulings, orders, and case-management directions were clearly judicial in nature and within the scope of DWD's jurisdiction, so protected by quasi-judicial immunity).

Therefore, the claims against Ms. Walcott should be dismissed under Rule 12(b)(6) because Talley-Smith has failed to state a plausible claim that Walcott violated his rights under either Title VII or the 14th Amendment's due process clause. I do recognize that the Seventh Circuit has instructed when a plaintiff's complaint is dismissed under Rule 12(b)(6) the general rule is to give at least one opportunity to amend the complaint before the action is dismissed. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). Count III will

be dismissed, and while I have substantial doubts whether any claim would be viable against Ms. Walcott, the dismissal will be without prejudice. Talley-Smith is granted leave to re-file Count III if he chooses, and cure the pleading deficiencies, if he can, as discussed in this opinion.

## Conclusion

Defendant Kimberly Walcott's Motion to Dismiss [DE 9] is GRANTED with respect to Count III, which is **DISMISSED WITHOUT PREJUDICE**. Talley-Smith is granted leave to re-file and cure the pleading deficiencies within 30 days from the date of this Order.

This complaint remains pending against Defendants Webb Ford, Inc. and Vince Shaughnessy.

SO ORDERED.

ENTERED: February 12, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT